Joe J. McKay
Attorney-at-Law
P.O. Box 1803
Browning, MT 59417
(406) 338-7262
powerbuffalo@yahoo.com
Attorney for the Plaintiff Howard Conway

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

HOWARD CONWAY,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Cause No. CV-21-52-GF-BMM

COMPLAINT

Plaintiff Howard Conway, for his COMPLAINT against the Defendant United States of America, alleges as follows:

1. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 - 2680.

2. Jurisdiction is vested with the Court pursuant to 28 U.S.C. Sec. 1346(b).

3. Plaintiff Howard Conway is an enrolled member of the Blackfeet Indian Tribe and resident of the Blackfeet Indian Reservation. At all times relevant to this

1

COMPLAINT, Plaintiff Conway was an owner and lessee of individual Indian trust land within the Blackfeet Indian Reservation, Montana through a lease from the Defendant United States of America, acting by and through the Department of the Interior, Bureau of Indian Affairs as trustee for individual and Tribal trust land.

3. At all times relevant to this COMPLAINT, the Defendant United States of America, acting by and through the Department of the Interior, Bureau of Indian Affairs, as trustee for individual and Tribally owned land within the Blackfeet Indian Reservation, was responsible for leasing activity of said lands pursuant to the requirements of applicable statutes, regulations and decisional law.

4. At all times relevant to this COMPLAINT, the Defendant United States of America had/has a fiduciary duty to protect Indian people, their land and the resources which are derived from that land; which duty is codified in Federal law as part of the American Indian Agricultural Resource Management Act, 25 U.S.C. Sec. 3713 and the regulations promulgated thereunder.

5. An integral part of the Defendant United States of America's fiduciary duty to protect individual Indian trust land, is the mandatory duty of the Bureau of Indian Affairs to enforce the trespass regulations on individual Indian trust land.

**FACTUAL BACKGROUND**

6. Plaintiff Howard Conway is an enrolled member of the Blackfeet Indian Tribe and resident of the Blackfeet Indian Reservation.

7. For the past 40 years Conway has been involved in the ranching business on the Blackfeet Reservation. As part of his operation he regularly and historically obtained Grazing Permits for grazing rights on Range Units within the Blackfeet Indian Reservation.

8. One of the Range Units for which Conway has had a Grazing Permit for more than 20 years is Blackfeet Range Unit No. 175.

9. In compliance with the applicable Blackfeet Tribal Grazing Resolution and Regulations, Conway fenced the perimeter of Range Unit No. 175 from the time that he obtained the unit.

10. Importantly, Conway is also a part owner of land within Range Unit No. 175. As part of his payment for the grazing privileges, he pays the co-owner of the land to which he is a part owner.

The BIA has a direct trust duty to Conway as a co-owner of the land in Range Unit No. 175 to protect it from trespass and to enforce the trespass laws against any trespassing party, including collecting damages.

11. Conway was billed for and paid for the use of Blackfeet Range Unit No. 175 for the 2018 Grazing season.

12. Prior to the beginning of the 2018 Grazing season Conway contacted the Blackfeet Agency regarding his concerns about trespassing livestock on Range

3

Unit 175 in the past year (2017) and that he didn't want it to happen again in 2018. Conway followed up his contact to the Blackfeet Agency in early June of 2018. After his June 2018 complaints to the BIA Blackfeet Agency, the Agency Superintendent Thedis Crowe apparently sent an email to her staff (Kenneth Bird and Galen Hall) stating that a field inspection was warranted based on Conway's trespass allegations.

13. On June 30, 2018, the BIA Blackfeet Agency Staff apparently conducted a field inspection of Range Unit No. 175. That inspection revealed that there were 95 cow/calf pairs and 3 bulls which belonged to someone else trespassing on Range Unit No. 175.

14. Based on BIA Conservation guidelines, Range Unit No. 175 has a carrying capacity of 219.9 AUM's, which translates to 55 head of cattle or cow/calf pairs. At the time that BIA Blackfeet Agency Staff conducted their field inspection of Range Unit No. 175 on June 30, 2018, not only were there cattle trespassing on the unit, the number of cattle significantly exceeded the carrying capacity of the unit. The unit was overstocked with trespassing cattle.

15. Because of the trespassing cattle and the fact the number of those cattle exceeded the carrying capacity of the unit, Conway did not put any of his own cattle or any pasture cattle for which he had a permit, on Range Unit No. 175

4

during the entire 2018 grazing season. The trespassing cattle were consuming the available forage and may have damaged the unit.

16. On July 2, 2018 Conway filed a written complaint of trespass with the BIA Blackfeet Agency regarding trespassing cattle on Range Unit No. 175.

17. On July 9, 2018, BIA Blackfeet Agency Staff again made a field inspection of Range Unit No. 175. According to their report there were 95 cows and 3 bulls trespassing on the unit.

18. On July 16, 2018 the BIA Blackfeet Agency sent a notice of trespass violation to the owner of the livestock giving him 3 days to remove the cattle.

19. Notwithstanding the statements made by the BIA Blackfeet Agency to the owner of the trespassing cattle that the cattle had to be removed within 3 days, the cattle owner took no steps to remove the cattle and the BIA Blackfeet Agency did nothing and took no action to enforce its trespass notice.

20. Conway continued to complain to the Blackfeet Agency and on August 9, 2018 the BIA Blackfeet Agency sent the owner of the trespassing cattle a notice of intent to impound. That notice gave the owner of the cattle 5 days to remove the trespassing cattle or they would be impounded.

21. After the end of 5 days, the owner took no action to remove the trespassing cattle from Range Unit No. 175, and the BIA Blackfeet Agency did

nothing to enforce its notice of intent to impound warning letter. The trespassing cattle remained on the unit.

22. By this point in the year, the trespassing cattle had consumed all the available forage on Range Unit No. 175.

23. Having had no response from the Blackfeet Agency in mid-August of 2018 Conway called the Rocky Mountain Regional Office of the Bureau of Indian Affairs to voice his complaint. Between August 13, 2018 and August 30, 2018, the BIA Rocky Mountain Regional Office and the Blackfeet Agency exchanged communication regarding Conway's complaint, but nothing was done.

The individual employees involved at the Rocky Mountain Regional Office were Matt Lopez and Jarvis Gust. Ultimately neither BIA Blackfeet Agency or the Rocky Mountain Regional Office carried out their duty to protect the resource, nor did they carry out their regulatory duty to enforce their administrative actions and remove the trespassing cattle and assess damages against the owner as required by and set forth in the Federal Regulations.

24. The 2018 Blackfeet grazing season ended and Conway was not able to use Blackfeet Range Unit No. 175 for the entire grazing season. As a result Conway lost the entire value of the unit which he had paid for in the amount of $4,756.44. The land suffered damage from being overstocked for such a long

period of time. No assessment of damages was ever made against the owner of the trespassing cattle.

25. Blackfeet Indian Allotment No. 1408 lies entirely within Range Unit No. 175. Because of Conway's permit and the Blackfeet Grazing Regulations, when Allotment No. 1408 was in Range Unit No. 175, Conway fenced part of the western boundary and the southern boundary of Allotment No. 1408. The remainder of the allotment was never fenced at any time by Conway or anyone else.

26. Some years back, the two (2) co-owners of Allotment No. 1408 reserved the land. Pursuant to the applicable rules, when they reserved the land from Grazing Unit No. 175 it was their duty to fence the remainder of the allotment. They never did so.

27. Subsequent to that reservation by the owners, one of the owners passed away. That owners heir attempted to enter into an owner's use permit for Allotment No. 1408, however the other living owner refused to consent. No steps were taken to fence allotment No. 1408 at that time either.

28. Plaintiff, Howard J. Conway, has never removed any fence from the boundaries of Blackfeet Allotment No. 1408. As set forth herein, other than his own fence on part of the western boundary and along the southern boundary, there was never a fence around Allotment No. 1408 to remove.

## COUNT I – NEGLIGENCE

29. The Defendant United States of America, through its agent the Bureau of Indian Affairs, (BIA) had/has a duty to protect individually owned Indian trust land, including enforcing trespass regulations.

30. The Defendant United States of America through its agent the BIA breached its duty when it negligently failed to enforce the trespass regulations on Indian trust grazing land when trespass was occurring on Blackfeet Range Unit No. 175 as set forth above.

31. As a result of the BIA's negligent failure to enforce the federal trespass regulations on Indian trust land on Blackfeet Range Unit No. 175, which Plaintiff Conway was legal lessee of, Plaintiff Conway was deprived of the use of Blackfeet Range Unit No. 175 for the 2018 grazing season notwithstanding the fact that he had paid $4,756.44 for the use of Range Unit No. 175 for the 2018 grazing season.

32. The negligent failure of the Bureau of Indian Affairs staff at the Blackfeet Indian Agency and the Rocky Mountain Regional Office to carry out their duty to protect the land from trespassing livestock and to carry out their regulatory duty to enforce the trespass regulations including assessing and collecting damages from the owner of the trespassing cattle was the direct and proximate cause of Conway's loss.

33. Plaintiff Conway is entitled to recover the sum of $4,756.44 from the Defendant United States of America and such other amounts as he may prove at trial and be entitled tor recover under the applicable law.

## COUNT II – NEGLIGENCE

34. The Defendant United States of America, through its agent the Bureau of Indian Affairs, (BIA) had/has a duty to protect individually owned Indian trust land, including enforcing trespass regulations.

35. The Defendant United States of America through its agent the BIA breached its duty when it negligently failed to enforce the trespass regulations on Indian trust grazing land when trespass was occurring on Blackfeet Range Unit No. 175 as set forth above.

36. As part of its duty to enforce Federal trespass regulations on individual Indian trust land, the Defendant United States of America though its agent the Bureau of Indian Affairs had a duty to assess trespass penalties for the value of the products used or removed, cost of damage to the Indian agricultural land, and enforcement costs incurred as a consequence of the trespass.

37. As a further part of its duty to enforce Federal trespass regulations on individual Indian trust land, the Defendant United States of America had a duty to ensure that damage to Indian agricultural lands resulting from trespass is rehabilitated and stabilized at the expense of the trespasser.

38. The Defendant United States of America through its agent the Bureau of Indian Affairs negligently failed to conduct an assessment of the damage to the land lying in Blackfeet Range Unit No. 175 and therefore failed to determine the nature and cost of the damage to the agricultural and failed to require any rehabilitation program paid for by the trespassing party.

39. The Blackfeet Agency also breached its trust responsibility to Conway as a trust land owner by allowing the trespass to occur on his land, allowing it to be overstocked and not assessing and collecting damages from the owner of the trespassing cattle as required by the law and applicable regulations.

40. As a result of the negligence of the Defendant United States of America, the Plaintiff Howard Conway as an owner of land within Range Unit No. 175 was damaged in an amount to be proven at trial and for which damage Plaintiff Conway is entitled by applicable law to recover from the Defendant

## EQUAL ACCESS TO JUSTICE ACT

41. This action is brought pursuant to 5 U.S.C. Sec. 504 and 28 U.S.C. Sec. 2412.

WHEREFORE Plaintiff Howard Conway prays for judgment as follows:

1. For damages in the amount of $4,756.44 for loss of the use of Blackfeet Range Unit No. 175 for the 2018 grazing season pursuant to Count I of the Complaint; and

2. For damages in the amount of $4,756.44 and such amount as may be proven at trial for the damage to the forage of Range Unit No. 175 on land where Plaintiff is the co-owner as may be allowed by applicable law.

3. For attorney's fees and costs as allowed by law.

4. For such other and further relief as may be just and appropriate in the circumstances.

DATED this 10th day of May, 2021.

                                                                                        _/s/ Joe J. McKay_____
                                                         Joe J. McKay, Attorney-at-Law
                                                         Attorney for Plaintiff Howard Conway